# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2807

_____

Brian Joseph Kinder,             *
                                   *

           Appellant,      *

                                   * Appeal from the United States
      v.                         * District Court for the
                                   * Eastern District of Missouri.

Michael Bowersox,         *
                                   *

           Appellee.       *

_____

Submitted: May 14, 2001

Filed: November 16, 2001

_____

Before McMILLIAN and BOWMAN, Circuit Judges, and BOGUE,[1] District Judge.

_____

BOWMAN, Circuit Judge.

Brian Kinder filed a habeas petition in the District Court[2] alleging nearly forty grounds for relief. The court denied the petition and granted a certificate of appealability (COA) on twenty-one of those issues. Kinder appeals and we affirm.

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

A jury convicted Kinder of the December 22, 1990, rape and first-degree murder of Cynthia Williams in Jefferson County, Missouri, and he was sentenced to death. He appealed. His Missouri Supreme Court Rule 29.15 post-conviction motion was denied after an evidentiary hearing. His appeal from that denial was consolidated with his direct appeal in the Missouri Supreme Court. That court rejected Kinder's arguments and affirmed the conviction, the sentence, and the denial of post-conviction relief. State v. Kinder, 942 S.W.2d 313 (Mo. 1996) (en banc), cert. denied, 522 U.S. 854 (1997).

Kinder then sought relief in the District Court under 28 U.S.C. § 2254 (1994 & Supp. IV 1998), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214. The court considered Kinder's arguments and addressed each one thoroughly and at length, ultimately denying § 2254 relief. Before us now are the twenty-one issues on which the District Court granted a COA. To bring some order to our opinion, we discuss the claims by categories we have chosen. But initially we will restate briefly the scope of our review since AEDPA.

I. Standard of Review

The relief Kinder seeks will not be granted on any claim "adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[3] 28 U.S.C. § 2254(d)(1). Our first step, then, in evaluating a challenge to the state

_____

[3]Kinder does not contend that any of the issues he raises were not "adjudicated on the merits in State court proceedings." The Missouri Supreme Court addressed all the issues raised here in its disposition of the consolidated appeal. We will refer to that court's analysis in both the direct and the post-conviction appeals, depending on the issue raised and in which appeal the court considered it.

court's application of the law is to determine what, if anything, the Supreme Court has said on the subject.[4]  From there, we proceed to take a careful look at the decision of the state court.  That decision will be viewed under AEDPA as "contrary to" clearly established federal law if the state court has applied a rule that directly contradicts Supreme Court precedent or has reached a result opposite to a result reached by the Supreme Court on "materially indistinguishable" facts.  Williams v. Taylor, 529 U.S. 362, 405 (2000) (concurring opinion of O'Connor, J., for the Court).  As for an "unreasonable application" of the law, we must remember that unreasonable is not the same as incorrect.  Penry v. Johnson, 121 S. Ct. 1910, 1918 (2001).  The state court's application might be erroneous, in our "independent judgment," yet not "unreasonable."  Williams, 529 U.S. at 411.

The factual findings of the state court also may be challenged in a § 2254 petition, but they are subject to an even more deferential review.  Relief may be granted if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Factual findings by the state court "shall be presumed to be correct," a presumption that will be rebutted only "by clear and convincing evidence."  Id. § 2254(e)(1).

---

[4]There is a suggestion in Williams v. Taylor, 529 U.S. 362 (2000), "that state-court decisions that unreasonably extend a legal principle from [Supreme Court] precedent to a new context where it should not apply (or unreasonably refuse to extend a legal principle to a new context where it should apply) should be analyzed under § 2254(d)(1)'s 'unreasonable application' clause."  529 U.S. at 408.  It was unnecessary for the Court to decide the question in Williams, so it was reserved for another day.  For the record, we note that Kinder makes no such arguments on any of his COA issues.

Mindful of these standards, we consider Kinder's arguments on appeal.[5]  As ever, we review any factual findings of the District Court for clear error and consider legal issues or mixed questions of law and fact de novo.  See Dye v. Stender, 208 F.3d 662, 665 (8th Cir. 2000).

## II.  Pretrial and Jury Selection Issues

### A.  Trial Judge's Failure to Recuse

For his first issue, Kinder asserts that Judge Earl Blackwell of the state trial court should have disqualified himself as trial judge, as Kinder requested before the trial began.  The judge was running for reelection around the time of the trial.  On March 31, 1992, six days before Kinder's trial was to begin, the judge announced that he was switching political parties and issued this press release, dated "FOR RELEASE 5:00 P.M. MARCH 31st." and signed by the judge, which we quote in its entirety:

> When asked why he had filed on the Republican ticket Blackwell, who served 16 years (1958-1974) in the Missouri Senate as a Democrat, said, "Republican?  Democrat?  Who gives a damn?  I once heard a man

---

[5]The federal courts may consider a prisoner's § 2254 petition "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  In his brief, Kinder has shown a tendency to blur the line between mere errors of state law and errors of constitutional dimension.  It occurs to us that a number of Kinder's claims, as presented, may not be cognizable in a federal habeas petition and should not have been included in the COA.  See 28 U.S.C. § 2253(c)(2) (Supp. IV 1998) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.").  Because of the gravity of Kinder's situation, however, we will assume, as to the claimed trial errors where no constitutional right is plainly implicated, that Kinder is alleging violations of his procedural due process right to a fair trial.  See U.S. Const. amend. XIV, § 1.

say 'Only politicians profit from politics; the people gain nothing'. That man was Earl Blackwell, and I believe he was right. Anyway, good judges cannot be politicians".

"Why did I file as a Republican? Especially in a Democrat stronghold such as Jefferson County? Some may say it's because I like to live dangerously. But that's not the case," Blackwell said.

"The truth is that I have noticed in recent years that the Democrat party places far too much emphasis on representing minorities such as homosexuals, people who dont' [sic] want to work, and people with a skin that's any color but white. Their reverse-discriminatory quotas and affirmative action, in the work place as well as in schools and colleges, are repugnant to me," Blackwell said. "I believe that a person should be advanced and promoted, in this life, on the basis of initiative, qualifications, and willingness to work, not simply on the color of his or her skin, or sexual preference."

"While minorities need to be represented, or [sic] course, I believe the time has come for us to place much more emphasis and concern on the hard-working taxpayers in this country", Blackwell said. "That majority group of our citizens seems to have been virtually forgotten by the Democrat party."

Blackwell concluded, "In feeling as I do, I am certainly not alone in Jefferson County. Many many people, formerly Democrats, have told me that they will no longer vote as Democrats. They say they have had enough. And I have, too."

Kinder filed a motion for recusal with the court, noting that he, Kinder, was a minority who was unemployed at the time of the crimes for which he was about to stand trial. He argued that the judge's comments reflected a negative attitude toward minorities and people who are not "hard-working taxpayers." The judge held a hearing on April 2, 1992, and overruled the motion, stating:

The Court is not prejudiced against this defendant or any black person in any degree. The Court, as a matter of fact and the Court's record will show having served in the Missouri legislature for sixteen years, that there is no stronger believer in Constitutional rights than this Court.

People get confused sometimes when you talk about group rights, civil rights, or white rights or black rights or yellow rights, when they start talking that way they lost me.

As far as this Court is concerned every individual and every citizen of this country is absolutely entitled to their individual Constitutional rights whether they be yellow, red, white, black or polka-dot. It doesn't make any difference to this Court. A person is a person and an individual is an individual. I think people get off the track when they start talking about color. But in so far as this Court is concerned there is no stronger defender of individual Constitutional rights than this Court and this defendant can rest assured and if he doesn't know it now he will know it after the trial, I am sure. This defendant can rest assured there is no prejudice on the part of this Court. If there is prejudice in any direction it is prejudice towards upholding each individual's Constitutional rights, as I said whether the individual be white, black, red, yellow or whatever, it doesn't make any difference to this Court. Therefore the motion for recusal is overruled.

Partial Transcript of Proceedings at 3-4 (Apr. 2, 1992).

Kinder maintains that the District Court "deferred completely to the state court adjudication of Kinder's claims" and "offers no explanation why it is not an unreasonable application of federal law by the Missouri Supreme Court to hold that a judge who claims minorities are not hardworking is not actual biase [sic], or has the appearance of bias." Br. of Appellant at 5, 6. According to Kinder, because Judge Blackwell was apparently or actually biased, clearly established law required him "to recuse himself after issuing his press release" because "[a] criminal defendant has an

-6-

undisputed constitutional [due process] right to be tried before an impartial judge."
Id. at 9.

There is no question that the law on judicial bias is clearly established: a criminal defendant is constitutionally required to be tried before an impartial judge, and the likelihood or appearance of bias, even in the absence of actual bias, may prevent a defendant from receiving a fair trial. See Taylor v. Hayes, 418 U.S. 488, 501 (1974); In re Murchison, 349 U.S. 133, 136 (1955). But the District Court said that Kinder did not "appear[] to assert that the Missouri courts' decisions were 'contrary to' or an 'unreasonable application' of clearly established Supreme Court precedent." Memorandum and Order at 16. The court noted that in response to the State's argument that no Supreme Court precedent supports Kinder's position, Kinder countered that the question then became one to be contemplated under § 2254(d)(2): Was there an unreasonable determination of the facts? Although Kinder invokes the "contrary to" and the "unreasonable application of" law standards in his brief in this Court, Br. of Appellant at 9, he does not identify any authority to support the arguments.[6] In view of the nature of this case, where the death penalty is involved, we have, out of an abundance of caution, extensively surveyed United States Supreme Court opinions in this area and have come up with nothing that would even hint at an unreasonable application of clearly established law based on the facts of this case,

---

[6]Kinder cites the decision in State v. Smulls, 935 S.W.2d 9 (Mo. 1996) (en banc), cert. denied, 520 U.S. 1254 (1997), which applied Missouri's code of judicial ethics, for the proposition that Judge Blackwell's press release created a conclusive presumption of bias. The Missouri Supreme Court concluded that Smulls did not require that result in Kinder's case. We will not presume to question the Missouri Supreme Court's interpretation of Missouri state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); see also Mann v. Thalacker, 246 F.3d 1092, 1096 (8th Cir. 2001) (noting that a state supreme court's decision regarding that state's recusal statute "disposes of the question" of "[w]hether [the] judge had a statutorily imposed obligation to recuse himself").

much less any federal law that is "contrary to" the decision of the Missouri Supreme Court. Kinder makes no allegation that Judge Blackwell had "a direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case." Tumey v. Ohio, 273 U.S. 510, 523 (1927). Likewise, Kinder's is not among the "situations [that] have been identified in which experience teaches that the probability of actual bias on the part of the judge . . . is too high to be constitutionally tolerable," such as where the judge "has a pecuniary interest in the outcome" or where "he has been the target of personal abuse or criticism from the party before him." Withrow v. Larkin, 421 U.S. 35, 47 (1975); see also Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 821 (1986) ("Certainly only in the most extreme of cases would disqualification on [the basis of bias or prejudice by a judge] be constitutionally required . . . .").

That leaves us with the question of whether the state court unreasonably determined the facts when it declared that Judge Blackwell was not actually biased and that his impartiality could not reasonably be questioned. The Missouri Supreme Court noted the Rule 29.15 court's finding of no "racial bias in the conduct of the underlying trial" and found that "the judge made no statement that could reasonably be perceived as a threat to ignore the law in favor of his own policy preferences."[7] Kinder, 942 S.W.2d at 322. We agree there is "little point in defending" the judge's press release to the extent it could "be read to disparage minorities." Id. at 321. The court determined, however, that when read in context, "the statements merely express the trial judge's dissatisfaction with affirmative action and government entitlement programs" and, as such, are political and not judicial. Id. It might be that we (or others) would independently find to the contrary on the question of bias or appearance of bias. But these state-court findings are presumed correct, and Kinder has not met his "burden of rebutting the presumption of correctness by clear and

---

[7]The Rule 29.15 hearing was conducted by a different judge—in fact, by the judge who defeated Judge Blackwell in the election held just after Judge Blackwell switched parties.

convincing evidence." 28 U.S.C. § 2254(e)(1). As with "reasonableness" in evaluating the application of clearly established law, that a federal habeas court might believe the findings of the state court to be incorrect does not mean they are unreasonable under § 2254(d)(2).[8] Weaver v. Bowersox, 241 F.3d 1024, 1030 (8th Cir. 2001).

We affirm the District Court's denial of habeas relief on Kinder's claim of judicial bias.

## B. Change of Venue

Kinder claims his due process right to a fair trial was violated when the trial court overruled his motion for change of venue, which he sought for two reasons: (1) pretrial publicity about the murder of Cynthia Williams and Kinder's arrest for the crime and (2) the racial makeup of the population of Jefferson County, Missouri. Kinder proposes that the denial of his motion resulted in a trial that was fundamentally unfair and that the Missouri Supreme Court's adverse "decision is contrary to established federal law or applied established federal law in an unreasonable way." Br. of Appellant at 46. He details the pretrial publicity related to the crime and contends that it was so prejudicial that it was "manifest error" to deny the motion, citing Patton v. Yount, 467 U.S. 1025, 1031 (1984) (noting the Court's holding in a previous case that "the trial court's findings of [juror] impartiality might be overturned only for 'manifest error'"). As for racial bias in Jefferson County, Kinder evidently would have us find bias per se because less than one percent of the population is black.

---

[8]To the extent that the issue of judicial bias may be a mixed question of law and fact, the state court's determination that Kinder's right to due process was not violated as the result of judicial bias or the appearance of bias is neither contrary to nor does it result from an unreasonable application of clearly established federal law.

Upon review of the transcript of voir dire, the Missouri Supreme Court noted there was only one person on the jury who had seen or heard media coverage of the case; that juror indicated during voir dire that she had formed no opinion about Kinder's guilt or innocence. The court also concluded that Kinder had not shown that racial bias against him was the inevitable consequence of the county's racial composition. Kinder had not demonstrated the necessary prejudice in any juror, for either reason, to show that he was deprived of a fair and impartial trial. The court therefore concluded that the trial judge did not abuse his discretion in overruling the motion. Kinder cites a number of Supreme Court cases that explain when a change of venue is constitutionally required, but none that are factually indistinguishable from his such as to render the state court's decision here contrary to clearly established law. And having considered the law and the record in this case on the question, we agree with the District Court that the state court's decision is not the result of an unreasonable application of clearly established law or an unreasonable determination of the facts.

## C. Continuance for Mental Exam

Kinder sought a continuance in the trial court when the doctor he had selected for his mental evaluation fell ill more than a month before trial. The court denied the motion because Kinder explained neither what he expected the exam to reveal nor the materiality of the evidence to his defense. The Rule 29.15 court noted that in November 1991 Kinder had undergone a psychiatric examination at the request of the defense and upon order of the trial judge. The conclusion of the physician: Kinder was competent to stand trial and did not suffer a mental disease or defect at the time of the murder. The exam for which Kinder sought the continuance was to be conducted by a psychiatrist of Kinder's choosing. The Missouri Supreme Court agreed that Kinder had "not met his burden of showing prejudice," and so he could not show that the trial judge abused his discretion in denying the continuance. Kinder, 942 S.W.2d at 323. Kinder faults the Missouri Supreme Court's factual

finding that he was not prejudiced by the denial of the continuance, contending it is unreasonable. In the alternative, he seeks remand to the District Court—and funding—so that he might "develop and present expert testimony upon the matter." Br. of Appellant at 83.

Kinder's conclusory statement that he suffered prejudice as a result of the ruling is not clear and convincing evidence of prejudice and is therefore insufficient to rebut the presumption of correctness that attaches to the state court's finding to the contrary. In addition, we reject Kinder's contention that the state court's decision is an unreasonable application of the Supreme Court's decision in Ake v. Oklahoma, 470 U.S. 68 (1985). In Ake, the Supreme Court said that due process requires a state to "assure the defendant access" to psychiatric assistance, but only "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial." 470 U.S. at 83. As the state court reasonably found, Kinder made no such showing, and so the state court's decision does not reflect an unreasonable application of Ake. Further, the District Court correctly held that Kinder was not entitled to an evidentiary hearing under AEDPA. See 28 U.S.C. § 2254(e)(2), which declares that a petitioner is not entitled to an evidentiary hearing in the district court on a § 2254 petition, if he failed to develop the factual basis of his claims in state court, unless his claim relies (1) on a new, retroactive rule of constitutional law or (2) on facts that could not have been discovered earlier. Kinder's claim regarding the state trial court's denial of a continuance does not rely on a new, retroactive rule of constitutional law or on facts that could not have been discovered earlier. Indeed, all the facts pertinent to the claim have been apparent since before his trial.

## D.  Striking of Death-Scrupled Jurors

During voir dire, four venire persons were stricken for cause, over Kinder's objections, when they expressed reservations about the death penalty. Kinder argues

that because these four indicated that they would obey the court's instructions and follow and apply the law in their deliberations on the death penalty, it was error of constitutional dimension to strike them for cause. According to Kinder, the Missouri Supreme Court's decision to the contrary therefore reflects an unreasonable application of clearly established law.

Venire members Kelley and Vrouvas, when first asked, both said unequivocally that they would be unable to vote for a sentence of death; both later recanted. Venire member Lynde first indicated that he could impose the death penalty, but then expressed reservations about sitting in judgment of another person. In response to questioning by the defense, he said, "I don't feel like I'd be qualified to take the man's life or put him in prison for the rest of his life." Transcript of Voir Dire at 134. In other words, he would not even be able to *convict* Kinder of first-degree murder, given the only two sentencing options for such a conviction. Upon further questioning, he, too, was rehabilitated, agreeing that if he was "put in that position" (that is, seated on the jury), he thought he could follow the court's instructions and make the necessary decisions. Id. Venire member Lewis initially was uncertain about imposing the death penalty and, like Lynde, indicated a reluctance to sit in judgment of another person. In a word, he was ambivalent on the subject, at times unable to answer questions at all and at other times saying he did not know what he thought. He also indicated, when asked, that he was uncertain whether the looming decision on punishment might affect his concentration during the guilt phase of the trial, but that it was a possibility. The Missouri Supreme Court decided that the trial judge did not abuse his discretion in striking these four venire members for cause.

"[A] sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." Witherspoon v. Illinois, 391 U.S. 510, 522 (1968). If even one member of the venire is improperly excused for cause under Witherspoon,

-12-

"the subsequently imposed death penalty [cannot] stand." Gray v. Mississippi, 481 U.S. 648, 660 (1987) (reiterating that upon the finding of a Witherspoon violation, harmless error analysis is inappropriate). The standard for striking death-scrupled jurors "is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" Wainwright v. Witt, 469 U.S. 412, 424 (1985) (quoting Adams v. Texas, 448 U.S. 38, 45 (1980)). The bias need not be evident from voir dire with "unmistakable clarity" because "many veniremen simply cannot be asked enough questions to reach the point where their bias has been made 'unmistakably clear.'" Id. at 424-25. It is clear from the voir dire transcript in Kinder's trial that the judge was "left with the definite impression that [the four] prospective juror[s] would be unable to faithfully and impartially apply the law." Id. at 426. Reviewing courts defer to the trial judge's decisions regarding bias because the judge's "predominant function in determining juror bias involves credibility findings whose basis cannot be easily discerned from an appellate record." Id. at 429. In this case, Judge Blackwell found that regardless of their recantations or rehabilitation, the four jurors needed to be excused for cause. It was "peculiarly within [the] trial judge's province" to evaluate the "demeanor and credibility" of the venire members and to make that determination. Id. at 428.

Kinder has not rebutted with any evidence—much less clear and convincing evidence—the presumption that the Missouri Supreme Court's findings concerning juror bias are reasonable. Further, under the teachings of Wainwright v. Witt, the state court's decision was a totally reasonable application of clearly established law. See Patton, 467 U.S. at 1037 n.12 (noting both "factual and legal questions to be considered in deciding whether a juror is qualified").

### E.  Removal of Venire Member Kramper

During voir dire, venire member Kramper asked to speak with the trial judge in private. The judge granted the request, without objection from either party. After

the meeting, the judge told the parties that Kramper had explained that he could not be fair to Kinder because he, Kramper, belonged to a "white organization." Transcript of Voir Dire at 79. The judge struck Kramper for cause.

At the Rule 29.15 hearing, Kramper testified that he belonged to a "traveler's protection association," or TPA. Based on his attendance at a social gathering of the organization's members, he believed that the TPA excluded minorities from membership. He asked to speak with the trial judge, he said, out of his concern that it would "mess up the case" if he sat on the jury because of his membership in an all-white organization, although he iterated that he was never himself a racist. Transcript of Rule 29.15 Hearing at 184 (Feb. 6, 1995). Kramper subsequently learned he was mistaken about the TPA.

Although Kinder would have us conclude otherwise, we hold that the Missouri Supreme Court's determination of the facts is reasonable. Kinder faults the court for not detailing Kramper's testimony at the Rule 29.15 hearing wherein he denied any personally held beliefs in white supremacy. But the state court never indicated that Kramper was properly struck because he was racist; the court simply determined that Judge Blackwell understood that Kramper could not be fair to Kinder because of his membership in an all-white organization. Kinder has not met his burden to show by clear and convincing evidence that this is an unreasonable determination of the facts.

Kinder also objects to the fact that no record was made before Kramper's disqualification since Kramper met with the judge in private. According to Kinder, because there is no record support for Kramper's removal and no way to review the reasonableness of the decision, the only conclusion that can be drawn is that a qualified venire member was removed in violation of Kinder's constitutional rights. As we have said, we disagree with Kinder's factual premise because we conclude it was reasonable for the state court to find that Kramper was not qualified to serve as a juror. Given the trial judge's finding that Kramper could not be fair to Kinder, and

the deference paid by a reviewing court to the decision to strike a venire member for bias, Wainwright v. Witt, 469 U.S. at 428-29, the state court's conclusion is fully in keeping with federal law.

## III. Trial Issues

## A. DNA Evidence

Kinder next contends that the DNA evidence presented against him was faulty. The State's DNA expert tested five samples from the vaginal swabs taken during the autopsy of Cynthia Williams, comparing them with blood samples from Kinder, another suspect, and Williams herself. His testing resulted in five autorads—visual depictions—showing DNA chromosome markers. The expert witness testified that Kinder's DNA profile matched the profile from the swabs and that the probability that the match was random was 1 in 8.9 million. Kinder insists that one of the autorads was altered and suggests that one of the bands was erased on the original. Had the band appeared on the autorad, he posits, it would have eliminated him as a suspect. Kinder also challenges the methodology of the State's expert, as he did in pretrial proceedings in the state court.

On cross-examination, counsel for Kinder questioned the prosecution's expert witness on the suspected alteration and on his methodology and then raised the same issues in the direct examination of Kinder's own expert witness. The Missouri Supreme Court concluded that "the claim of alteration was for the jury to decide." Kinder, 942 S.W.2d at 328. The court further held that the methodology employed by the prosecution's expert, both in the DNA testing and in evaluating the results, was generally accepted by the scientific community. Therefore, challenges to the expert's methodology would again go to the weight and not the admissibility of the DNA evidence. Kinder now protests that these decisions are an unreasonable application of clearly established law.

We disagree. The state court's conclusions reflect wholly reasonable applications of the legal principles regarding the admissibility of expert evidence as declared by the Supreme Court in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 589 (1993), cited by Kinder for the proposition that expert testimony must be relevant and reliable.[9] Kinder's arguments raise no grounds for reversal of the District Court's denial of § 2254 relief.

On another DNA matter, Kinder claims he should be given the funding and the opportunity to retest the DNA. The Missouri Supreme Court concluded that Kinder had sufficient opportunity and resources at trial to address any issues regarding the DNA evidence, and indeed had availed himself of that opportunity. The District Court concluded that Kinder's claim "does not raise a constitutional issue cognizable in a federal habeas petition." Memorandum and Order at 47 n.11 (quoting <u>Gee v. Groose</u>, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (citations to additional quoted cases omitted)). We agree. This claim is at most a state-law claim. We note that Kinder had a full and fair opportunity at the trial stage to run his own DNA tests (as he chose not to do, perhaps so as to avoid confirming the state expert's results) and to hire his own experts to analyze the data (as he did).

## B. Kinder's Appearance in Shackles

According to the factual determinations of the Missouri Supreme Court, Kinder was placed in leg shackles at the beginning of the evidentiary portion of his trial because of remarks he made to bailiffs. Kinder was already seated when the jurors entered the courtroom, and the trial judge found that the jurors were unable to see Kinder's shackled legs. Nevertheless, on defense counsel's motion, and without

---

[9]We are aware, of course, that <u>Daubert</u> is an exegesis of Rule 702 of the Federal Rules of Evidence and governs the admission of expert evidence in federal trials only. <u>Daubert</u> does not bind the states, which are free to formulate their own rules of evidence subject only to the limits imposed by the Constitution.

objection from the prosecution, the shackles were removed during the first recess in the proceedings, when the jurors were not present.

While there may be circumstances where a prisoner's appearance in shackles for his trial will amount to a constitutional violation, see, e.g., Holbrook v. Flynn, 475 U.S. 560, 568-69 (1986) (noting that shackling is "the sort of inherently prejudical practice that . . . should be permitted only where justified by an essential state interest specific to each trial"), we agree with the District Court that this is not that case. Kinder failed to provide clear and convincing evidence—or any evidence for that matter—to rebut the presumption of reasonableness that attached to the state court's determination that no jurors were aware of the shackles. Kinder maintains that the District Court should have granted him a hearing so that he could develop the facts to support his case by questioning jurors about whether they noticed the shackles. Once again, Kinder has not made the necessary showing under AEDPA to be entitled to a hearing in the District Court. See 28 U.S.C. § 2254(e)(2).

## C. Cross-Examination of Wingo

Kinder asserts that his due process rights were violated when the trial judge sustained an objection to a question defense counsel posed to prosecution witness Dwayne Wingo on cross-examination. The testimony in question concerned Wingo's belief that Kinder "set him up" for a drug charge:

> Q [by defense counsel]: Isn't it true that you think Brian Kinder is responsible for this drug charge that's pending against you?
>
> A: I know he is.
>
> Q: So you think that he's responsible for the position that you're in, is that right?
>
> A: Yes.

Q: You think that he set you up with the police, that's what you think?

A: I'm going on what the police told me.

Q: What did the police tell you?

[The prosecution objected that this question called for hearsay, and the judge sustained the objection.]

Q: So you're saying then that your opinion is based on what the police told you?

A: Correct.

Trial Transcript vol. I at 46 (Apr. 8, 1992).

The Missouri Supreme Court held that the claim was not preserved for review because no offer of proof was made, and Kinder did not request review for plain error. "Upon gratuitous review of the record," however, the court concluded there was no "manifest injustice." Kinder, 942 S.W.2d at 329. The parties and the District Court all have focused on the question of procedural default. We conclude, however, that our time is better spent addressing the state court's "gratuitous review" on the merits, and determining whether the decision it reached reflects an unreasonable application of federal law. Although it is likely that the hearsay objection was improperly lodged and sustained,[10] it is apparent that Kinder's due process rights and his right to cross-examine this witness were not violated, as he charges. His counsel questioned Wingo about the pending drug charge and why Wingo believed Kinder was involved, and it is abundantly clear that Wingo believed as much because that is what the police told him. It was not necessary for Wingo to say precisely what he had

_____

[10]It appears that what the police actually told Wingo was not offered for the truth of the matter asserted. Counsel was trying elicit to why Wingo believed Kinder set him up and was not trying to prove that Kinder actually did set him up.

-18-

learned from the police. The decision resulting from the state court's "gratuitous review" is not the result of either an unreasonable determination of the facts or an unreasonable application of law.

### D. Witness White's Invocation of the Fifth Amendment

During the trial, the prosecution called Charles White as a witness. He attempted to question White about White's knowledge of Kinder's activities on the night of the murder, including that Kinder had been at Cynthia Williams's house earlier that night and was planning to return. White immediately invoked his Fifth Amendment right not to be compelled to testify against himself. Kinder claims that the prosecution called White as a witness knowing that White would invoke his Fifth Amendment right. The prosecution had this knowledge, Kinder suggests, because White had expressed reluctance to answer questions during a pretrial deposition without consulting a lawyer first. After White invoked the Fifth Amendment, the prosecutor asked a leading question that suggested inculpatory behavior on the part of Kinder—a question to which the prosecutor knew he would receive no answer. Kinder suggests this behavior violated his "right to confront adverse witnesses." Br. of Appellant at 20.

The Missouri Supreme Court determined that White was not called solely to invoke his Fifth Amendment right. After his refusal to be questioned during his deposition, White nevertheless gave a statement about the night of the murder, which both sides had before trial. Thus, it was not out of the question that White would testify to the same information at trial. Additionally, because White was not suspected to have had any involvement in the rape or murder, he had no valid grounds for claiming Fifth Amendment immunity; in fact, he was cited for contempt for doing so. As it turns out, White was not moved to testify by the threat of being held in contempt of court, but, in theory, he might have felt compelled to do so. In any event, Kinder can show no prejudice because Wingo had already testified to much of the

same information contained in the leading question. The court concluded that any information that may have been imparted to the jury via the prosecutor's question was cumulative to Wingo's testimony and, therefore, the prosecutor's behavior was harmless error, if error at all. We agree with the District Court that the reasonableness of both of these determinations has not been rebutted by clear and convincing evidence.

The state court also concluded that any problem with the leading content of the question was cured by an instruction advising the jurors that questions posed to witnesses are not evidence and that, as jurors, they were not to speculate on witnesses' answers when no answers were given. The conclusions of the state court do not result from an unreasonable application of clearly established law. Cf. Douglas v. Alabama, 380 U.S. 415, 419 (1965) (holding petitioner's rights were violated where a question to an accomplice who invoked the Fifth Amendment included reading the accomplice's statement, which implicated petitioner and provided the only evidence of petitioner's guilt presented in the case).

The District Court properly denied § 2254 relief on this ground.

E. Evidence of Kinder's Failure to Attend Cynthia Williams's Funeral

At Kinder's trial, the prosecution, without objection, elicited testimony from a witness that Kinder had not attended the funeral of Cynthia Williams. Kinder claims that the admission of this "evidence of consciousness of guilt" was "completely improper," "extremely damaging," denied him due process of law, and was not harmless error. Br. of Appellant at 26. The Missouri Supreme Court concluded that "[t]he inference that Kinder might have been the killer because he failed to attend the funeral is so slight that it could not have affected the outcome of the case." Kinder, 942 S.W.2d at 326. This conclusion is not contrary to any federal

law Kinder can cite, nor is it the result of an unreasonable application of clearly established law or an unreasonable determination of the facts.

## F. Evidence of the "Leg-Crossing Incident"

Police officer Terry Thomas testified at trial that when questioning Kinder before his arrest for the rape and murder of Cynthia Williams, Kinder and Thomas had a religious discussion. Kinder agreed to swear on a Bible that he had not killed Williams, but crossed his legs before he did so and refused to uncross them before swearing. Kinder raised this issue in his Rule 29.15 proceeding and in his § 2254 petition, and the District Court included the issue in its grant of a COA. In his brief, however, although Kinder sets out the facts relating to the claim, he does not argue it separately. Instead, his claim that the leg-crossing evidence was improperly admitted is presented to bolster his position that the case against him was weak; it appears only in his arguments on two unrelated issues: witness White invoking his Fifth Amendment rights, Br. of Appellant at 23 ("Evidence such as the leg-crossing incident, relied upon by the State as a crucial admission of consciousness of guilt, was inadmissible as it was the product of a non-Mirandized custodial interrogation, and was an improper comment upon Kinder's invocation of his right to silence."), and the admission of evidence that Kinder did not attend Williams's funeral, id. at 27 ("The leg-crossing incident, relied upon by the State as a crucial admission of consciousness of guilt, was inadmissible as it was the product of a non-Mirandized custodial interrogation, and was an improper comment upon Kinder's invocation of his right to silence."). Kinder does not go beyond these statements of the issue to cite authority or to argue the law. See Fed. R. App. P. 28(a)(9)(A) ("The appellant's brief must contain . . . the argument, which must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies . . . ."). Although it may be that Kinder has abandoned the issue on appeal, we will give him the benefit of the doubt and consider it separately.

In the state court, Kinder asserted "that the testimony was irrelevant and that its admission was a violation of due process and an improper comment on his constitutional right to remain silent." Kinder, 942 S.W.2d at 326. The Missouri Supreme Court concluded that the testimony was properly admitted as evidence of consciousness of guilt. Also, the court correctly noted that the right to remain silent only applies when a suspect is in custody, and Kinder was not "in custody" when being questioned by Terry. The state court's decision does not reflect an unreasonable determination of the facts, nor is it contrary to or the result of an unreasonable application of federal law. The District Court properly denied this claim.

IV. Penalty Phase Issues

A. Statutory Aggravating Circumstances

During the penalty phase of the trial, the jury found two statutory aggravating circumstances: (1) that Kinder had a previous conviction for second-degree assault and (2) that Kinder murdered Cynthia Williams during perpetration of a rape. Kinder argues that the evidence of both was insufficient as a matter of law. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements . . . beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

According to Kinder, his earlier conviction for second-degree assault "was for having caused a 'physical injury' only and not for a 'serious physical injury,'" and therefore it could not be used as an aggravating circumstance. Br. of Appellant at 63. Also, he proposes, it was error for the trial judge to determine that the conviction was

for a "serious" assaultive offense and that the question should have been submitted to the jury.[11]

The Missouri Supreme Court reiterated its conclusion from a previously decided, unrelated case that the question in this circumstance is not whether the assaultive behavior resulted in serious injury, but whether the crime of conviction was a felony. The second-degree assault for which Kinder previously was convicted was indeed a felony, and, as we have said, we will not question the Missouri Supreme Court's interpretation of state law. The court also concluded that this question of law was appropriately decided by Judge Blackwell. This decision did not result from an unreasonable application of clearly established law as enunciated by the Supreme Court.[12]

---

[11]These are not "sufficiency" issues because they do not challenge the decisions of the fact-finder (the jury). To the extent Kinder is suggesting there actually is a sufficiency issue on this aggravating circumstance, his claim has no merit. As the Missouri Supreme Court noted, "Kinder admits that respondent introduced the judgment and sentence of a prior conviction for second degree assault." Kinder, 942 S.W.2d at 332. Based on that evidence, the fact of the conviction was found by the jury. The state court therefore rejected the sufficiency argument on this question. That decision does not result from an unreasonable determination of the facts or an unreasonable application of law.

[12]In his reply brief, Kinder cites, for the first time, Apprendi v. New Jersey, 530 U.S. 466 (2000), and argues that the decision supports his position that whether the assaultive behavior was "serious" was a question for the jury. See 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). The decision in Apprendi was filed before this appeal was docketed, and Kinder should have made his Apprendi argument in his main brief. We ordinarily will not address arguments raised for the first time in a reply brief. Neb. State Legislative Bd., United Transp. Union v. Slater, 245 F.3d 656, 658 n.3 (8th Cir. 2001). But we do note that this statutory aggravating circumstance is specifically excluded from the rule of Apprendi because it is a "fact of a prior

As for Kinder's assertion that evidence of the rape was insufficient, he claims the only evidence of this aggravating circumstance was "the suspect DNA evidence." Br. of Appellant at 62. The state court declared this a "rehash" of Kinder's earlier challenge to the admission of the State's DNA evidence. Kinder, 942 S.W.2d at 332. As we have held, the Missouri Supreme Court's decision regarding the admission of the DNA evidence is a binding pronouncement of state law and is completely reasonable, even when measured against Daubert, which governs the admission of scientific evidence and expert testimony in federal court. The court's decision regarding the sufficiency of the evidence of rape likewise is neither contrary to nor the result of an unreasonable application of Jackson.

We affirm the District Court's denial of § 2254 relief on these grounds.

### B. Admission of Evidence of Unadjudicated Offenses

Denise Shye, Kinder's niece, testified during the penalty phase that in February 1990, Kinder raped her. Sandra Culton, Kinder's distant cousin and Cynthia Williams's sister, testified to Kinder's attempted rape of Culton in April 1990. Kinder did not properly preserve objections to this testimony but argued in the Rule 29.15 proceeding that its admission was plain error. Kinder now argues that this evidence was not reliable, because it was not corroborated, and that it was prejudicial. He contends its admission therefore violated clearly established federal law as set out in Lockett v. Ohio, 438 U.S. 586, 604 (1978) (Burger, C.J., joined by three justices) ("We are satisfied that this qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed."), and Payne v. Tennessee, 501 U.S. 808, 825 (1991) ("In the event that evidence is

conviction" and because it did not increase the penalty beyond the statutory maximum, which was death. Moreover, the trial court left it for the jury to find the fact of Kinder's conviction for second-degree assault, even though Apprendi would not require it.

-24-

introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief."). In addition, he says his rights were violated because defense counsel did not have adequate opportunity to investigate the women's claims and prepare a defense to the evidence.

The testimony of Shye and Culton was presented as evidence of non-statutory aggravating circumstances. The Missouri Supreme Court held that it was within the discretion of the trial judge to allow evidence of unadjudicated offenses during the penalty phase. And, as the District Court noted in discussing Kinder's complaints regarding reliability and prejudice, the instructions to the jury required not only that the proposed non-statutory aggravating circumstances be proved beyond a reasonable doubt, irrespective of corroboration, but also that the jury could consider such circumstances only if a statutory aggravating circumstance was proved—which, when proved, by itself made Kinder eligible for the death penalty. The state court's decision is not the result of an unreasonable application of Lockett or Payne.

As for Kinder's claim regarding notice, both Shye and Culton were on the witness list provided to the defense during discovery, yet Kinder did not seek to ascertain what their testimony would be (assuming, as he now implies, that he was unaware of what they might have to say). Moreover, although he was empowered by state law to do so, Kinder did not request information from the prosecution about the non-statutory aggravating circumstances that the state intended to prove. The Missouri Supreme Court held that this notice to Kinder was sufficient, and that any failure in details of the notice did not result in "manifest injustice." Kinder, 942 S.W.2d at 331. This decision is not the result of either an unreasonable determination of facts or an unreasonable application of clearly established federal law.

-25-

## V. Closing Argument Issues

## A. Guilt Phase Arguments

Kinder complains of these comments made by the prosecutor in the guilt phase closing argument:

> This was not a nonentity. *She was a mother. A daughter, a sister, a friend*, this was life, that was draining out of her body never to return. . . .
> . . .
> People or [sic] fed up. They're angry. They're angry at the killing in the streets. They're killing --
>
> [Objection as to relevance overruled.]
>
> At the sense of fear they have to live through. We do not want to live behind locked doors and barred windows. *We want our streets back.* That is the message that needs to ring from the courtrooms in our country. We want our streets back. . . . And our verdict is going to send a message -- our verdict is going to send a message that we are not going to tolerate -- we don't like this happening.
> . . .
> . . . Cynthia Williams will never, ever breath [sic] another breath. *Her family and friends will never, ever talk to her, or see her ever again.*

Trial Transcript vol. 1 at 117-19 (Apr. 10, 1992) (emphasis added). And then:

> Did he rape her? Of course he did. Why? Who knows? *Because he's not like you and me.* Because he wanted to get the ultimate thrill.

Id. at 145 (emphasis added).

-26-

As to the portion of the argument to which counsel objected, the Missouri Supreme Court held that it was permissible for the prosecutor to "argue that the jury should send a message that criminal conduct will not be tolerated" and that the "court did not abuse its discretion in overruling the objection." Kinder, 942 S.W.2d at 329. For the parts of the argument not objected to at trial, the court declared these remarks to be proper argument, not made for "the purpose of inflaming or arousing fear in the jury," and so there could be no "manifest injustice." Id. at 329-30.

"The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). We have read the entire transcript of the trial and agree with the District Court that the Missouri Supreme Court's decision is neither contrary to nor the result of an unreasonable application of clearly established law.

## B. Penalty Phase Arguments

Kinder also takes issue with portions of the prosecutor's penalty phase argument, but again the purportedly improper remarks were not objected to when made. In contrasting Kinder with his brother, who was serving as an officer in the armed services at the time, the prosecutor said:

> You cannot blame what Brian Kinder is on his environment. You cannot blame what Brian Kinder is on how he is brought up. You cannot blame what Brian Kinder is on society. You can blame it on pure evil. *Evil stares at you in the courtroom*, and I ask you to stare back and do not blink. . . . *We don't want to share our streets one day with evil. We cannot risk one day sharing our lives and our world with evil.*

-27-

Transcript on Appeal vol. I at 184-85 (Apr. 11, 1992) (penalty phase proceedings) (emphasis added).  In his rebuttal closing argument, after going over some of the evidence of aggravating and mitigating circumstances, the prosecutor said:

> Now that's what you are dealing with.  It is your choice.  You want to cage him, and feed him for the rest of his life, or do you want to do what justice demands [and] vote for death?

Id. at 193.

Kinder maintains these arguments were improper because they "refer[] to danger in the community," they are "an appeal to jurors' fears and emotions," and they "concern[] the cost of imprisoning Kinder."  Br. of Appellant at 58.  The Missouri Supreme Court said the statements were proper argument because they addressed Kinder's character and the appropriate punishment for his crime.  The court held there was no manifest injustice.

Again, considering the standard set forth in Darden v. Wainwright, we cannot say that the state court's decision was contrary to or the result of an unreasonable application of clearly established federal law.

## VI.  Ineffective Assistance of Counsel Issues

The District Court's COA includes six of Kinder's claims of ineffective assistance of trial counsel.  Kinder contends that the state court unreasonably applied the clearly established law of Strickland v. Washington, 466 U.S. 668 (1984).[13]

---

[13]Actually, Kinder's brief states, "The *District Court*, in examining Kinder's ineffective assistance of counsel claims, invoked the correct legal standard.  Its error was in the unreasonable application of the Strickland standard to the facts of this case."  Br. of Appellant at 66 (emphasis added).  Nevertheless, we think Kinder

Under the now familiar <u>Strickland</u> test, counsel will not be declared constitutionally ineffective unless counsel's performance was objectively deficient and, as a result, Kinder's defense was prejudiced to such an extent that he was deprived of a fair trial. 466 U.S. at 687.

## A. Jury Selection in Jefferson County

Kinder claims his counsel were ineffective for "fail[ing] to investigate and object to the exclusion of African-Americans from jury panels in Jefferson County and in Kinder's case." Br. of Appellant at 68. He bases the underlying claim on the allegations of Robert Russell, who is black and says he was summoned for jury duty in Jefferson County eight times (including for Kinder's case), but each time was called and told not to appear.

The Missouri Supreme Court concluded that Kinder had not demonstrated "that the representation of [blacks] in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community," nor had he shown that the purported "under-representation is due to systematic exclusion of [blacks] in the jury-selection process." <u>Kinder</u>, 942 S.W.2d at 337 (citing <u>Duren v. Missouri</u>, 439 U.S. 357, 364 (1979) (stating the elements of a prima facie violation of the fair cross-section jury requirement)). Because Kinder was unable to make a prima facie case of systematic racial under-representation, even by the time of the post-conviction proceedings, the court concluded that counsel could not have been professionally unreasonable for failing to make a futile challenge to jury selection procedures at the time of trial. Additionally, the court decided that Kinder had not

intends to raise the argument under § 2254(d)(1)—he believes it is the Missouri Supreme Court's decision that is the result of an unreasonable application of federal law.

shown how he was prejudiced by Russell's removal. These determinations are not the result of an unreasonable application of Strickland.

## B. Conversation with Kramper

Kinder alleges that the performance of his trial counsel was objectively deficient because they failed to object to the trial judge's private conversation with venire person Kramper, as described above. The Missouri Supreme Court noted that Kramper was not stricken for his views on the death penalty in violation of Witherspoon and that Kinder made no suggestion that the jurors who did serve were biased against him. Thus he raised no constitutional issue related to the striking of Kramper. In these circumstances, Kinder demonstrated neither deficient performance by counsel nor prejudice as the result of the private conversation. The court's decision is the result of a reasonable application of Strickland.

## C. Venire Person Porter

Venire panel member Patricia Porter told the court during voir dire that her niece had been abducted and molested and that Porter would be unable to forget that during jury deliberations. Kinder's counsel did not seek to strike Porter for cause, and this, Kinder now claims, resulted in constitutionally ineffective assistance of counsel. The Missouri Supreme Court noted that Porter's statements during voir dire regarding the incident with her niece did not reflect bias against Kinder in his case, so any move to strike her for cause would have been unavailing. Thus, according to the court, counsel's performance could not have been deficient. On these facts, we agree with the District Court that the state court's conclusion is the result of a reasonable application of Strickland.

## D. DNA Evidence

Kinder asserts that his counsel were constitutionally ineffective in failing "to evince and argue to the jury that the DNA evidence alteration which occurred masked a result which excluded Kinder as the rapist and killer." Br. of Appellant at 71. This claim is outside the scope of the COA. Kinder's other claims regarding admission of the DNA evidence are addressed in Part III.A. of this opinion.

## E. Penalty Phase Evidence

Kinder next insists that counsel were ineffective for failure to call two witnesses during the penalty phase of his trial: Cynthia Williams's mother and a priest who knew Kinder when Kinder was in high school. Both would have opposed the death penalty for Kinder. The priest also would have testified that Kinder was respectful and friendly as a student, and that if a student today had test scores such as Kinder did when he was in school, such a student would be tested for a learning disability. The Missouri Supreme Court concluded that the evidence would have been largely cumulative, noting that Kinder's counsel did call other witnesses to testify in mitigation during the penalty phase. The District Court, in its § 2254 review, noted that calling the victim's mother was a risky strategy, notwithstanding her opposition to the death penalty. The state court concluded that counsel's performance was not objectively deficient and that in any event there was no reasonable probability that the outcome would have been different had these witnesses been called (that is, Kinder suffered no prejudice). These state-court determinations are not the result of an unreasonable application of the Strickland test.

## F. Aggravating Circumstances

Kinder argues that counsel should have objected to the evidence that Kinder sexually assaulted two other women in the year before he raped and murdered

Williams. The Missouri Supreme Court held that because the evidence was properly admitted, it was not deficient performance on the part of trial counsel to fail to lodge an objection against it. This, too, is a reasonable application of <u>Strickland</u>.

## G. Closing Arguments

Kinder maintains that counsel were ineffective for failing to object to portions of the closing arguments in both the guilt and the penalty phases. The Missouri Supreme Court held that because it already had concluded that the closing arguments were not improper (a conclusion we already have held not to be an unreasonable application of federal law), it could not be objectively unreasonable for counsel to fail to object to them. We agree with the District Court that this is a reasonable application of <u>Strickland</u>.

## VII.

For the reasons discussed, we affirm the judgment of the District Court denying § 2254 relief to Kinder.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.