886 F.2d 998
 UNITED STATES of America, Appellee,
v.
Rickey A. LEE, Appellant.
UNITED STATES of America, Appellee,
v.
Roderick W. STEPHENSON, Appellant.
UNITED STATES of America, Appellee,
v.
Herman PAIGE, Jr., Appellant.
UNITED STATES of America, Appellee,
v.
W.C. CARTWRIGHT, Jr., Appellant.
UNITED STATES of America, Appellee,
v.
Lance W. ROBINSON, Appellant.
UNITED STATES of America, Appellee,
v.
Alinzo M. PAIGE, Appellant.
UNITED STATES of America, Appellee,
v.
Kevin B. PAIGE, Appellant.
UNITED STATES of America, Appellee,
v.
Alonzo D. BANKS, Jr., Appellant.
 Nos. 88-2347, 88-2349 to 88-2352, 88-2400, 88-2401 and 88-2592.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 16, 1989.
Decided Sept. 18, 1989.
Rehearing in Nos. 88-2350 and 88-2400 Denied Oct. 18 and
Oct. 20, 1989.
 
 Christopher Abele, Kansas City, Mo., for Herman Paige.
 David Hassan, Liberty, Mo., for Alinzo Paige.
 Leonard Meyer, Independence, Mo., for Roderick Stephenson.
 David Owen, Kansas City, Mo., for W.C. Cartwright.
 F.A. White, Kansas City, Mo., for Alonzo Banks.
 Roger Geary, Kansas City, Mo., for Lavester Robinson.
 Dan Dykstra, Kansas City, Mo., for Rickey Lee.
 Willis Toney, Kansas City, Mo., for Lance Robinson.
 John Edward Cash, Kansas City, Mo., for Kevin Paige.
 Peter M. Ossorio, Asst. U.S. Atty., Kansas City, Mo., for appellee.
 Before MAGILL, Circuit Judge, ROSS, Senior Circuit Judge, and CAMBRIDGE,* District Judge.
 MAGILL, Circuit Judge.
 
 
 1
 Nine defendants appeal from verdicts and sentences resulting from their joint trial stemming from their indictments for conspiracy to distribute and distribution of "crack" cocaine, money laundering, and engaging in a continuing criminal enterprise.[1] We affirm their convictions and sentences.
 
 I.
 
 2
 On March 16, 1988, a federal grand jury indicted twelve individuals on twenty-three counts relating to the sale of narcotics. Kevin Paige was charged with engaging in a continuing criminal enterprise (in violation of 21 U.S.C. Sec. 848) by leading a group that operated several "crack houses" in the Kansas City area. Lance Robinson was charged with money laundering in violation of 18 U.S.C. Sec. 1956. Other defendants were charged with conspiracy to distribute, possession with intent to distribute, and distribution of crack, and use of firearms during drug trafficking offenses.
 
 
 3
 Five defendants entered into written plea agreements, and three others cooperated as government witnesses during the joint trial. After the sixteen-day jury trial, six of the seven remaining defendants were convicted.
 
 II.
 A. Search and Seizure
 
 4
 Alinzo Paige alleges that the district court[2] erred in denying his motion to suppress evidence seized in a search of his girlfriend's residence at 4424 Troost, Kansas City, Missouri. On September 9, 1987, after police searched a first floor apartment at that address pursuant to a search warrant, they went on to search an apartment on the second floor. The police persuaded the apartment's lessee, Lisa Bland, to sign a form consenting to the search. Then officers seized a briefcase containing documents referring to Paige, Herman Paige, Jr., and W.C. Cartwright, a gun, crack, and more than $10,000 in cash. Paige contends that Bland did not consent to the search voluntarily.
 
 
 5
 "[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973). We review the trial court's determination that the consent was given voluntarily under the "clearly erroneous" standard. See United States v. O'Connell, 841 F.2d 1408, 1414 (8th Cir.), cert. denied sub nom., Patterson, II v. United States, --- U.S. ----, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988).
 
 
 6
 At the pretrial suppression hearing, Lisa Bland testified that officers used threats to coerce her to sign the consent form: "I just kept saying no and they said they was going to take my kids if I didn't let them search the apartment or sign the paper."
 
 
 7
 Three police officers testified at the hearing that no such threats were made. Sargeant McEntee testified that he asked Bland to sign the consent form two or three times. He informed her that she could "save us all a great deal of time and trouble if she would consent," and that "if in fact she was allowing them to sell or there was a cocaine operation there[,] that conceivably that would constitute perhaps a charge of endangering the welfare of a child and that she could conceivably lose her children to state authorities if that were the case." The officers testified that they informed Bland that they did not have a warrant and that she had a right to refuse to consent to the search.
 
 
 8
 The magistrate's finding that Bland consented to the search, reviewed de novo by the district court, rested largely on a determination of credibility. Neither the magistrate nor the district court believed Bland's claims that she had not read and understood the consent form and that she had signed it only because she feared the police would take away her children. Because Bland's inconsistent statements, her declaration that she had nothing to hide, and her personal relationship with Paige support that determination, we find no error in the district court's conclusion that Bland's consent was voluntary and not the product of psychological coercion.
 
 B. Security
 
 9
 During the trial, between ten and fourteen marshals were present in the courtroom. Seven unarmed marshals were seated behind the defendants, one marshal was stationed by both of the courtroom entrances, and three marshals sat in the back of the courtroom. During jury selection, the judge assigned numbers to each member of the venire, and instructed that all references to the venire be by number. During the course of trial, the jury was sequestered. On the first day of trial, counsel for Herman Paige, Jr. expressed concern about the "extraordinary" number of marshals present in the courtroom. On the second day, all defendants moved for a mistrial based on the combined prejudicial effects of these plainly visible security measures. The motion for mistrial was renewed several times during the trial. Defendants argue that these security measures, in combination, were unduly prejudicial, depriving them of the constitutionally required presumption of innocence.
 
 
 10
 The need for and extent of security measures during trial are within the discretion of the trial court. United States v. Gambina, 564 F.2d 22, 24 (8th Cir.1977). In reviewing the exercise of discretion, we look to the record to determine whether the trial court's actions were warranted. Id.
 
 
 11
 All of the marshals present in the courtroom were in plain clothes. On the first day of the trial, they wore badges or "shields" to identify themselves. After the first day, most of the marshals exchanged their badges for smaller lapel identification pins. Throughout the trial, the defendants were seated and the marshals were stationary before the jury entered the courtroom. For the record, the court explained that the number of marshals was based on the professional assessment of the Marshal's Service, which was based on a number of incidents which gave them reasons to believe there might be an escape attempt or threats to the safety of the people in the courtroom.
 
 
 12
 We believe the district court's use of security personnel was a reasonable balance of concerns for both courtroom security and minimizing undue prejudice. We are also satisfied that the court's decisions to sequester the jury and to refer to the venire by number were not an abuse of discretion. The court explained to the jury that the primary purpose of sequestration was to avoid undue influence of the jury by information from outside the courtroom. Although defendants characterized the use of numbers to identify the jury venire as an unconstitutional "anonymous" jury, we note that defendants' counsel were provided with the names of the jurors, and find no prejudice in the court's procedure.
 
 C. Severance
 
 13
 Defendants Stephenson, Cartwright, Banks, Herman Paige, and Alinzo Paige argue that their trial should have been severed from the trial of Kevin Paige, the only defendant charged with engaging in a continuing criminal enterprise. All defendants argue that the district court erred in denying their motions for separate trials.
 
 
 14
 To establish abuse of discretion in the denial of a motion to sever, defendants must demonstrate they were prejudiced by the jury's inability to follow the trial court's instructions and to "compartmentalize the evidence" as it related to the separate defendants. United States v. Adkins, 842 F.2d 210, 212 (8th Cir.1988).
 
 
 15
 Each of the defendants was named in the conspiracy charges, and the greater part of the evidence presented demonstrated the existence of the conspiracy and various acts associated with it. Defendants made no showing that they were prevented from raising any defenses as a result of joinder. The verdict finding defendants not guilty on some counts and acquitting Bryan Cartwright altogether evinces the jury's ability to compartmentalize the evidence and follow the court's instructions. See United States v. Masters, 840 F.2d 587, 590 (8th Cir.1988). We find no error in the joint trial of the defendants.
 
 D. Excluded Evidence
 
 16
 At trial, when the prosecutor attempted to display a scale used for weighing drugs, W.C. Cartwright, Jr. objected because the proffered exhibit had been excluded as impermissibly seized. The court immediately sustained defendant's objection and instructed the jury to disregard the evidence. The inadmissible exhibit was an insubstantial part of the evidence presented, and was not a significant part of the government's case against Cartwright. Finding no prejudice, the trial court properly denied Cartwright's motion for a mistrial. United States v. Petary, 857 F.2d 458, 463 (8th Cir.1988).
 
 E. Closing Argument
 
 17
 Herman Paige, Jr. claims that references in closing argument to the "Paige family business" and "Paige family organization" were prejudicial because they circumvented the court's limiting instructions as to evidence admitted only against Kevin Paige on two counts of the indictment for continuing criminal enterprise and money laundering. However, apart from the evidence on those counts, there was substantial evidence applicable to all defendants supporting the inference that the conspiracy was a "family business." We find no impropriety in the prosecutor's remarks, and thus no abuse of discretion in the trial court's ruling. See United States v. Pierce, 792 F.2d 740, 742 (8th Cir.1986).
 
 III.
 
 18
 Defendants challenge the constitutionality of the Sentencing Reform Act and Sentencing Guidelines, and the application of the Sentencing Guidelines to the conspiracy charges. Alonzo Banks, Jr. and Roderick Stephenson also raise challenges to their sentences under the Guidelines. Since the appeals were filed, the constitutionality of the Act and the Guidelines has been established. Mistretta v. United States, --- U.S. ----, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). As to the other sentencing issues, we find no error.
 
 A. Money Laundering
 
 19
 Lance Robinson pleaded guilty to one count of money laundering in violation of 18 U.S.C. Sec. 1956(a)(1)(B).[3] On appeal, Robinson argues that his offense was completed before the effective date of the Guidelines (November 1, 1987) and that application of the Guidelines to his case therefore violates the ex post facto clause of the Constitution, article I, section 9, clause 3.
 
 
 20
 Robinson testified at his co-defendant's trial that Kevin Paige asked him to find someone to buy a house for him at 13308 Corrington, Grandview, Missouri. Paige told Robinson there was $25,000 in the deal for whoever bought the house. Robinson initially put Paige in contact with his employer, Larry Goins. Paige delivered $50,000 in cash to Goins to make the purchase, but Goins backed out the following day. Robinson then told Paige that he would try to buy the house.
 
 
 21
 On October 9, 1987, Robinson signed a real estate contract and an offer to purchase the house for $126,000, with $51,000 to be paid in cash. Robinson applied for a loan for the balance of the purchase price. After submitting a "lease" whereby Paige would rent the house from Robinson for $1,295 per month, Robinson was approved for the loan and told that he could close on the house. On November 6, 1987, Robinson closed the sale; he then transferred some $53,000 in cash on Paige's behalf, and signed a loan agreement securing a deed of trust recorded on that date. Robinson admitted, as part of his plea, that the cash came from Paige and that he knew it was the proceeds from illegal drug sales. Paige eventually paid Robinson $8,000 for his role in the transaction.
 
 
 22
 Under the money laundering statute, "financial transaction" is defined as:
 
 
 23
 a transaction involving the movement of funds by wire or other means or involving one or more monetary instruments, which in any way or degree affects interstate or foreign commerce, or a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree.
 
 
 24
 18 U.S.C. Sec. 1956(c)(4) (emphasis added). "Monetary instruments" specifically includes United States currency. 18 U.S.C. Sec. 1956(c)(5). Here, the transaction for which Robinson was sentenced--the transfer of Paige's drug money--occurred on November 6, 1987. The district court correctly applied the Guidelines to Robinson because the offense was completed after the effective date of the Sentencing Reform Act.
 
 B. Conspiracy
 
 25
 Defendants Robinson, Alinzo Paige, and Banks contend that their roles in the conspiracy ended before November 1, 1987, and thus they should not have been sentenced under the Guidelines. There is no question that the conspiracy began as early as September 1987 and continued beyond November 1, 1987, the effective date of the Guidelines. The law is clear that, since conspiracy is an ongoing act, an increased penalty "may be applied to a conspiracy which commenced prior to but was carried on and continued beyond the effective date of the Act." United States v. Corn, 836 F.2d 889, 898 (5th Cir.1988) (Davis, J., concurring in part, dissenting in part) (quoting W. Lafave & A. Scott, Criminal Law 94 (1972)). Although Banks was, in fact, in jail on November 1, 1987, at no time before that date had he affirmatively disavowed the conspiracy. See United States v. Boyd, 610 F.2d 521, 528 (8th Cir.1979), cert. denied sub nom., Clark v. United States, 444 U.S. 1089, 100 S.Ct. 1052, 62 L.Ed.2d 777 (1980). Therefore, the district court correctly concluded that the Sentencing Guidelines were applicable to Banks. The other defendants' similar claim is likewise without merit. Because defendant Lee acknowledged participation in the conspiracy both before and after November 1, 1987, his claim is also without merit.C. Sufficiency of the Evidence
 
 
 26
 Alonzo Banks argues that his base offense level of 32 was "arbitrarily" chosen by the district court and not supported by sufficient evidence. Banks apparently argues that the quantity of drugs sold connected to him was not established beyond a reasonable doubt. The record of the sentencing hearing shows that the district court held Banks accountable for only 140 grams of crack distributed during only the two weeks of his known involvement, and on that basis correctly chose an offense level of 32. The evidence in sentencing and at trial was sufficient to establish Banks' involvement. See Sentencing Guidelines Sec. 2D1.4, Note 1.
 
 IV.
 
 27
 Having reviewed the record and briefs, we affirm the convictions and sentences entered thereon.
 
 
 
 *
 THE HONORABLE WILLIAM G. CAMBRIDGE, United States District Judge for the District of Nebraska, sitting by designation
 
 
 [1]
 Defendants were sentenced for the following offenses:
 Lavester Robinson entered a plea of guilty to conspiracy to distribute cocaine base, 21 U.S.C. Sec. 846; on Robinson's motion, his appeal is dismissed pursuant to F.R.A.P. 42(b).
 Rickey Lee entered a plea of guilty to conspiracy to distribute cocaine base, 21 U.S.C. Sec. 846, and use of a firearm in relation to a drug trafficking offense, 18 U.S.C. Sec. 924(c) and 18 U.S.C. Sec. 2.
 Lance Robinson entered a plea of guilty to one count of money laundering, 18 U.S.C. Sec. 1956.
 Herman Paige, Jr. was convicted of conspiracy to distribute, 21 U.S.C. Secs. 841(a)(1), 846; four counts of distribution, 21 U.S.C. Secs. 841(a)(1), (b)(1)(C), and two counts of use of a firearm, 18 U.S.C. Sec. 924(c).
 Roderick Stephenson was convicted of conspiracy to distribute, 21 U.S.C. Sec. 846, distribution, 21 U.S.C. Secs. 841(a)(1), (b)(1)(C), and use of a firearm, 18 U.S.C. Sec. 924(c).
 Alonzo Banks, Jr. was convicted of conspiracy to distribute, 21 U.S.C. Sec. 846, and distribution, 21 U.S.C. Secs. 841(a)(1), (b)(1)(C).
 Alinzo Paige was convicted of conspiracy, 21 U.S.C. Sec. 846, five counts of possession with intent to distribute, 21 U.S.C. Secs. 841(a)(1), (b)(1)(B), and (b)(1)(C), and use of a firearm, 18 U.S.C. Sec. 924(c).
 W.C. Cartwright, Jr. was convicted of conspiracy to distribute, 21 U.S.C. Secs. 841(a), 846, possession with intent to distribute, 21 U.S.C. Sec. 841(b)(1)(B), and three counts of use of a firearm in relation to drug trafficking, 18 U.S.C. Sec. 924(c).
 Kevin Paige was convicted of engaging in a continuing criminal enterprise, 21 U.S.C. Sec. 848, conspiracy to distribute, 21 U.S.C. Sec. 846, two counts of possession with intent to distribute, 21 U.S.C. Sec. 841, two counts of commanding the distribution of a controlled substance, 21 U.S.C. Sec. 841, three counts of using a firearm, 18 U.S.C. Sec. 924(c), five counts of distribution, 21 U.S.C. Sec. 841, and money laundering, 18 U.S.C. Sec. 1956(a)(1).
 Bryan Cartwright (W.C. Cartwright's brother) was acquitted on all counts. Two other individuals named in the indictment entered into plea agreements and are not parties to this appeal.
 
 
 [2]
 The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri
 
 
 [3]
 18 U.S.C. Sec. 1956 provides in part:
 (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--
 * * *
 (B) knowing that the transaction is designed in whole or in part--
 (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or
 (ii) to avoid a transaction reporting requirement under State or Federal law,
 shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.
 18 U.S.C. Sec. 1956(a)(1)(B).